IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

PAUL EZRA RHOADES,            )
            )
Petitioner,            )
            )   Case No. CV 97-170-S-EJL
v.            )
            )   **MEMORANDUM DECISION**
DAVE PASKETT, Warden of the Idaho )   **AND ORDER**
State Prison; and ALAN LANCE,            )
Attorney General of the State of Idaho, )
            )
Respondents.            )
_____ )

Various motions are currently before the Court in this habeas corpus matter. Petitioner has filed a motion to amend his petition for writ of habeas corpus, a motion to stay, and a request for his federal attorneys to appear in state court.  Respondents have filed a motion to dismiss procedurally defaulted claims and a motion to dismiss *Teague*-barred claims.  All of these matters are ripe, and the Court has concluded that they will be decided without oral argument.  *See* D. Idaho L. Civ. R. 7.1 (d).

For the reasons set forth more fully herein, the Court will deny Petitioner's motions, grant in part Respondents' motion to dismiss *Teague*-barred claims, and deny as moot Respondents' motion to dismiss procedurally defaulted claims.

**Memorandum Decision and Order - 1**

# I.

## BACKGROUND

Petitioner stands convicted of murder, and other associated felonies, for the shooting deaths of Stacy Baldwin, Susan Michelbacher, and Nolan Haddon, which occurred during an approximately three week period in February and March of 1987. This habeas case arises from the judgment in the Haddon matter.

After Petitioner was convicted in separate trials for the murders of Ms. Michelbacher and Ms. Baldwin, he agreed to enter a conditional guilty plea to an amended charge of second-degree murder and robbery in the Haddon case. Petitioner maintained his innocence pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), but conceded that the State had sufficient evidence to convict him. Petitioner also reserved his right to appeal the trial court's adverse decisions. The district court subsequently sentenced Petitioner to two indeterminate life sentences, to be served concurrently. On February 1, 1991, the Idaho Supreme Court affirmed Petitioner's convictions and sentences. *State v. Rhoades*, 809 P.2d 455 (1991). Petitioner did not seek post-conviction relief.

On April 23, 1997, Petitioner filed a petition for writ of habeas corpus in this Court, raising six claims. After the Court concluded that the sixth claim was unexhausted, Petitioner filed an amended petition in which he deleted that claim. The State filed an answer on February 1, 2000.

Upon the parties' joint request, the Court stayed the federal case pending the outcome

**Memorandum Decision and Order - 2**

of state court proceedings in the related capital cases.  On December 3, 2004, Respondents filed a motion to vacate the stay.  Petitioner did not respond to this motion.  The Court thereafter lifted the stay and ordered the filing of dispositive motions.  In response to that order, Respondents have submitted two motions to dismiss.  At the deadline for the filing of dispositive motions, Petitioner filed a motion to amend his petition to add three new claims and a motion to stay these proceedings.  The Court will resolve Petitioner's motions first.

## II.

## MOTION TO AMEND

Petitioner contends that he has recently discovered that results from testing on biological evidence in 1987 excluded him as a contributor of the semen that was retrieved from the victim's body in the Michelbacher matter.  Petitioner attempts to connect the test results in that case to this case, arguing that because the same gun was linked to both murders, evidence that excludes him as the perpetrator in the Michelbacher case would also tend to exclude him as the perpetrator in the Haddon case.  Accordingly, Petitioner seeks to amend his petition to allege prosecutorial misconduct, actual innocence, and ineffective assistance of counsel.  This request will be denied as untimely.

**Memorandum Decision and Order - 3**

A.      The Test Results

At the Michelbacher trial, forensic scientist Donald Wyckoff testified that swab samples were taken from Ms. Michelbacher's body during an autopsy.[1]  Wyckoff concluded that semen was present on three swabs and that based upon serological tests–which included ABO blood typing, determining "secretor" status, and typing for an enzyme known as PGM–Petitioner could not be excluded as a possible source of the semen, but that other suspects could be excluded.  Wyckoff did not conduct a more refined test, known as PGM subtyping, and the samples were not subjected to DNA testing, which was in its infancy at the time.

Before trial, the State sent three of the swab samples to the crime lab at the Federal Bureau of Investigation for PGM subtyping.  The FBI reached a conclusion as to only one swab, Q1, which it subtyped as "PGMsub 1+."  *FBI Report*, pp. 1-2.  It appears that Petitioner's counsel was at least aware of the FBI's findings and discussed them with a defense expert, but Petitioner contends that his expert's opinion would only "neutralize" those findings. *See Motion to Amend*, p. 6.  As a result, the FBI report was not explored at the Michelbacher trial, the defense expert did not testify, and Wyckoff's conclusions remained essentially unopposed.

 In 2005, seventeen years after the entry of his *Alford* plea in this case, Petitioner submitted the FBI report to another scientific expert, Dr. Greg Hampikian, for his review.

---

[1]  The Court takes judicial notice of the state court record lodged in Case No. CV 93-156-S-EJL.

**Memorandum Decision and Order - 4**

Dr. Hampikian has concluded that the FBI report "did absolutely exclude [Petitioner] as a contributor of the semen." *Affidavit of Greg Hampikian*, ¶ 6.  Relying primarily upon Dr. Hampikian's interpretation of the FBI report, Petitioner now seeks to amend his petition in the Haddon case to allege that (1) the State withheld material exculpatory evidence, and failed to correct false testimony, in violation of his right to due process of law, (2) he is actually innocent, and (3) his trial counsel were ineffective in investigating and confronting the serological evidence.  Respondents object to the proposed amendments.

      B.    Standard of Law

      The Federal Rules of Civil Procedure apply to habeas corpus proceedings to the extent that they are not inconsistent with established habeas practice and procedure.  *See* Habeas Rule 11.  By statute, an application for habeas relief may be amended "as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.

      Federal Rule of Civil Procedure 15 governs the amendment of civil pleadings.  Because a responsive pleading has been served in this case, Petitioner may amend only by written consent of the adverse party or by leave of court, which shall "be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Although public policy favors amendment, a court retains the discretion to deny leave to amend after considering factors such as bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  These factors need not be given equal weight, and futility of the amendment alone

**Memorandum Decision and Order - 5**

may justify the denial of the request.  *Id.*

In a habeas case that has been initiated after the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), a request for leave to amend must also be construed in light the provisions and policies of AEDPA, which is designed to promote finality, comity, and federalism.  *Williams v. Taylor*, 529 U.S. 420, 436 (2000).  In particular, to advance the finality of judgments, Congress included a one-year statute of limitations in AEDPA, *see* 28 U.S.C. § 2244(d), and an amended habeas claim that has been tendered after the expiration of AEDPA's statute of limitations will relate back to the initial filing date only when it is "tied to a common core of operative facts" in the original pleading.  *Mayle v. Felix*, 125 S.Ct. 2562, 2574 (2005) (construing the interplay between AEDPA and Federal Rule Civil Procedure 15(c)).

C.   Analysis

The parties do not dispute that AEDPA's provisions are applicable to this case. Respondents make several arguments opposing Petitioner's motion, but the Court is persuaded that the one-year statute of limitations contained in 28 U.S.C. § 2244(d) has expired for the proposed claims, and that none of the claims will relate back to the time of the original filing.

In most cases, the statute of limitations begins to run from "the date on which the judgment became final by the conclusion of direct review, or the expiration of the time for seeking review."  28 U.S.C. § 2244(d)(1)(A).  Because direct review in this case concluded in 1991, Petitioner had a grace period of one year from April 24, 1996 in which to submit an

**Memorandum Decision and Order - 6**

application for habeas relief.  Although the original habeas petition was timely, the statute of limitations elapsed on April 24, 1997, over eight years ago, and Petitioner's three new claims are not timely.

Petitioner counters that any delay is attributable to the State's alleged concealment of the factual basis for his claims.  Petitioner appears to argue that the limitations period for the new claims either started on a later date because they are based upon newly discovered evidence, or that the period should be equitably tolled.  *See Shannon v. Newland*, 410 F.3d 1083, 1089-90 (9th Cir. 2005) (limitations period may be equitably tolled).

Petitioner is correct that § 2244(d)(1)(D) contemplates a later starting date for claims based upon newly discovered evidence, but the one-year period for such claims begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered *through the exercise of due diligence*."   28 U.S.C.  §  2244(d)(1)(D) (emphasis added).

Assuming, without deciding, that § 2244(d)(1)(D) applies here, the Court need not determine precisely when the exercise of due diligence would have uncovered the factual predicate of the new claims, but it was certainly before June 2004, which would have been one year before the claims were tendered to this Court.  The delay in this case is simply too long and Petitioner has displayed too little diligence during that time.  Petitioner does not dispute Respondents' assertion that he possessed the FBI report since the late 1980s.  The burden on Petitioner to submit a report that had been in his possession for several years to another expert was minimal.  Indeed, there have been several periods of time in this case

**Memorandum Decision and Order - 7**

during which nothing has occurred–either in this Court or in state court–and Petitioner has not satisfactorily explained why he did not seek a second opinion during that time.  For similar reasons, Petitioner has not demonstrated that he is entitled to equitable tolling.  *See, e.g., Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) (noting that petitioner must exercise reasonable diligence during the time that he seeks to toll).

Additionally, Petitioner's new claims will not relate back to the filing date of the original claims because they do not share "a common core of operative facts" with his previous claims.  *See Mayle v. Felix*, 125 S.Ct. 2562, 2574 (2005).  The proposed claims are based upon the FBI's 1987 PGM testing and Dr. Hampikian's interpretation of that testing. In contrast, Petitioner's first and second claims in his amended petition relate to police questioning of Petitioner at the time of his arrest, the third claim involves jailhouse informant testimony, and the fourth claim alleges that the trial judge was biased.  *See Amended Petition*, pp. 6-20. While the fifth claim also alleges that the State withheld exculpatory evidence, it is based upon an entirely different set of facts than those that support the proposed claims. *See Id.* at 20-23.

**Memorandum Decision and Order - 8**

Therefore, because the amended claims are untimely and will not relate back, Petitioner's motion to amend will be denied as futile.[2]

## III.

## MOTION TO STAY

Petitioner also asks the Court to stay this case pending completion of state post-conviction proceedings or pending completion of DNA testing in the capital cases from Bonneville County and Bingham County.  Because the Court has concluded that Petitioner's proposed claims would be untimely, good cause for a stay does not exist.  *See Rhines v. Weber*, 125 S.Ct. 1528 (2005).  Likewise, Petitioner has not convinced the Court that this case should be stayed to await DNA testing in state court in the capital cases.  Those post-conviction matters have been pending for over three years, and Petitioner has not yet indicated when, or if, DNA testing will occur.

Finally, the Court will deny Petitioner's request for authorization for the Federal

---

[2] Although the Court resolves this matter on timeliness grounds, the Court notes that is has some concern with Dr. Hampikian's conclusion.  Dr. Hampikian refers to the FBI's result from the Q1 swab as "PGMsub 1-" when it was, in fact, "PGMsub 1+." *See Affidavit*, ¶ 8; *see also FBI Report*, pp. 1-2.  While PGMsub 1+ does not match Petitioner's known blood sample, it does match the victim's.  Dr. Hampikian does not explain why the result *must* be based upon the perpetrator's semen on the Q1 swab rather than possibly reflecting the victim's own biological contribution to the swab.  Perhaps there is a simple explanation that has not been provided, but Donald Wyckoff testified at trial that distinctions regarding the source material, at least with respect to general PGM typing, could not be made.  *Trial Transcript*, p. 1778.  If this is accurate, then the FBI result would appear to be inconclusive, which may explain why the matter was not explored at trial.

Regardless, the link between the "semen evidence" in the Michelbacher case and this case appears to be tenuous.  The trial court severed these cases for trial and excluded from this case any evidence from the Michelbacher case.

**Memorandum Decision and Order - 9**

Public Defender's Capital Habeas Unit to appear in state court to pursue post-conviction relief in this non-capital case. There is no reason for this Court to authorize the Federal Public Defender to appear in state court to develop claims that will not be raised in this federal case. The Court otherwise expresses no opinion on the permissible scope of the Federal Public Defender's representation or whether the Capital Habeas Unit can be appointed or appear on its own volition in state court.

The Court now turns to the Respondents' motions to dismiss certain claims in the Amended Petition.

## IV.

## MOTIONS TO DISMISS

Respondents have filed two motions to dismiss. In one, they argue that portions of Petitioner's fourth and fifth claims in the amended petition were not properly exhausted in state court and are now procedurally defaulted.[3] In the other, Respondents argue that several claims are barred by the non-retroactivity principles of *Teague v. Lane*, 489 U.S. 288 (1989). In the interest of judicial economy, the Court will first address the motion to dismiss on *Teague* grounds. *See Lambrix v. Singletary,* 520 U.S. 518, 525 (1997) (noting that *Teague*

---

[3] Respondents initially argued that a portion of the first claim was also not properly exhausted, but now concede in their reply brief that the first claim "appears to have been exhausted in its entirety." *Id*. at 2. The Court agrees.

**Memorandum Decision and Order - 10**

issues may be addressed before procedural default questions when the *Teague* issues are more easily resolved).

For the reasons that follow, the Court concludes that non-retroactivity principles will bar consideration of the second, third, part of the fourth, and fifth claims.  To the extent that the third and fifth claims may not be *Teague*-barred, the Court alternatively denies those claims on the merits.  Because the Court's decision encompasses all of the claims that Respondents allege are also procedurally defaulted, the Court will deny Respondents' motion to dismiss procedurally defaulted claims as moot.

A.    Standard of Law

In *Teague*, the United States Supreme Court held that, subject to limited exceptions, a federal court may not apply a "new" constitutional rule in a habeas proceeding.  489 U.S. at 310-11.  If a *Teague* defense is raised, a district court must address the issue, even when the state court has denied relief on the merits.  *Beard v. Banks*, 542 U.S. 406, 409 (2004); *Horn v. Banks*, 536 U.S. 266, 272 (2002).

To determine whether a claim is barred by *Teague*, a reviewing court engages in a three-step process.  First, the court must ascertain the date on which the petitioner's conviction and sentence became final.   *Caspari v. Bolhen*, 510 U.S. 383, 390 (1994).  Second, the court must survey "the legal landscape as it then existed" to determine whether existing precedent compelled or dictated a finding that the rule at issue "was required by the Constitution."  *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997).  If the rule is considered

"new," the court must proceed to the third step and determine whether either of the two announced exceptions applies. *Teague*, 489 U.S. at 307. The presumption against retroactivity is overcome only if the new rule prohibits "a certain category of punishment for a class of defendants because of their status or offense," *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), or presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a particular conviction. *Teague*, 489 U.S. at 311.

    B.    <u>Analysis</u>

        1.    <u>Finality</u>

The Idaho Supreme Court denied Petitioner's petition for rehearing on March 28, 1991. *State's Lodging C-20.* Petitioner's convictions and sentences became final ninety days later, on June 26, 1991, when the time for filing a petition for certiorari in the United States Supreme Court expired. Any constitutional rule that Petitioner seeks to apply here must have been dictated by precedent as of that date.

        2.    <u>Second Claim</u>

In his second claim, Petitioner alleges that his inculpatory statements to police officers were admitted in violation of "higher standards of evidentiary reliability in capital cases" under the Eighth and Fourteenth Amendment. *See Amended Petition*, p. 8. The Court agrees with Respondents that this claim is *Teague*-barred.

**Memorandum Decision and Order - 12**

It is true that the United States Supreme Court has indicated in a line of cases that enhanced standards of reliability are applicable to capital cases, particularly to capital sentencing procedures. *See, e.g., Lockett v. Ohio*, 438 U.S. 586 (1978); *Beck v. Alabama*, 447 U.S. 625 (1980). This requirement, though, is based upon the qualitative difference between a sentence of death and any other sentence, and is designed to ensure accuracy and confidence in the "determination that death is the appropriate punishment in a specific case." *See Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

While this case began as a potential death penalty case, Petitioner's guilty plea to second-degree murder removed that possibility. Petitioner is now serving two concurrent life terms, and he does not face an impending execution for his crimes in this case. To decide this issue in Petitioner's favor, then, the Court would be required to find that the Constitution requires "higher standards of evidentiary reliability" in cases in which the defendant was not ultimately sentenced to death. Petitioner has not provided any authority that would demonstrate that such a rule was compelled by precedent at the time that his convictions became final in 1991.

The second claim is barred by *Teague*. Petitioner has not attempted to argue that the exception for "watershed" rules of criminal procedural is applicable, and the Court concludes it is not.

**Memorandum Decision and Order - 13**

3.   Third Claim

In his third claim, Petitioner alleges that the "constitutional guarantees of evidentiary trustworthiness mandated by the Eighth and Fourteenth Amendments" required the trial court to suppress Petitioner's inculpatory statements to two jailhouse informants.  *Amended Petition*, p. 12.  Petitioner's reliance upon the heightened standards of reliability applicable only to death penalty cases is again misplaced, and Petitioner's third claim is *Teague*-barred for the same reasons that his second claim is barred.

To the extent that this claim may be construed broadly to encompass a more general allegation that Petitioner's right to due process under the Fourteenth Amendment was violated, regardless of constitutional doctrine applicable to capital cases, the Court alternatively concludes that the claim fails on the merits.

The Idaho Supreme Court thoroughly analyzed this claim during Petitioner's direct appeal, finding that jailhouse informant testimony did not fall within one of the few categories of evidence that should be excluded as a matter of law, and determining that Petitioner's due process rights were not violated on the particular facts of the case.  *Rhoades*, 809 P.2d at 465.   In reaching that conclusion, the Idaho Supreme Court noted that Petitioner's rights were protected by the trial court's offer "to mitigate the effect of the testimony by allowing liberal cross-examination of the informers and by considering jury instructions to the effect that the testimony should be viewed with caution."  *Id.*

Memorandum Decision and Order - 14

The state court's faith in the protection afforded by cross-examination and a cautionary jury instruction squares easily with *Hoffa v. United States*, 385 U.S. 293 (1966). In *Hoffa*, the United States Supreme Court held that the Constitution did not erect a *per se* bar on the government's use of "informers," and that "[t]he established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly-instructed jury." *Id.* at 311.

The Idaho Supreme Court's decision also finds support in the Ninth Circuit's opinion in *Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004). In that case, a habeas petitioner also argued that the admission of "inherently unreliable" jailhouse informant testimony violated his due process right to a fair trial. *Id.* at 1147. Like *Hoffa*, the Ninth Circuit concluded that there was no general constitutional prohibition on the use of informant testimony and that the petitioner's constitutional rights were adequately protected through cross-examination and the trial court's jury instructions. *Id.* at 1148; *see also United States v. Cuellar*, 96 F.3d 1179, 1182 (9th Cir. 1996).

Thus, to the extent that Petitioner raises a cognizable, non-barred constitutional claim, the Idaho Supreme Court's decision is neither "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor does it reflect an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

**Memorandum Decision and Order - 15**

4. <u>Fourth Claim</u>

In this claim, Petitioner alleges that his Eighth and Fourteenth Amendment rights to an impartial judge were violated because the judge had shown bias and had recently sentenced Petitioner to death.  Petitioner's reliance on "heightened standards of reliability" under the Eighth Amendment is *Teague*-barred, but Petitioner will be permitted to proceed on a judicial bias claim in accordance with the general standards for analyzing such claims under the due process clause of the Fourteenth Amendment.

5. <u>Fifth Claim</u>

In his final claim, Petitioner alleges that his rights under the Fifth, Eighth, and Fourteenth Amendments were violated when the State withheld evidence that another individual, Kevin Buchholz, had allegedly confessed to Stacy Baldwin's murder, which was thought to have been committed by the same person who murdered Nolan Haddon.

The Idaho Supreme Court found as a factual matter that the defense was aware at the time that Petitioner entered his conditional guilty plea in this case that Buchholz had made statements that incriminated himself in the Baldwin homicide.  *See Rhoades*, 809 P.2d at 466. But Petitioner argued in state court, and argues again here, that the State withheld additional details regarding those statements.  In support of this claim, Petitioner relies upon *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  Respondents contend that Petitioner impermissibly seeks a new rule of constitutional law.

**Memorandum Decision and Order - 16**

By the time that Petitioner's convictions were final on June 26, 1991, it had long been understood that prosecutors had a duty under the due process clause to disclose all exculpatory evidence to the defense that was material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Bagley*, 473 U.S. 667, 676 (1985). The focus of *Brady*, however, was on a defendant's right to a fair trial, and the United States Supreme Court had not decided (and still has not decided) whether the duty to disclose exculpatory evidence extends to cases in which a defendant ultimately pleads guilty, or whether a guilty plea waives any challenge on that basis. *Cf. United States v. Ruiz*, 536 U.S. 622, (2002) (holding that there is no constitutional duty to disclose *impeachment* material before a guilty plea; not addressing whether due process requires disclosure of material evidence of factual innocence).

In the absence of Supreme Court case law, lower court decisions may be reviewed to determine whether a particular rule was dictated or compelled by precedent when a petitioner's conviction became final. *Belmontes v. Woodford*, 350 F.3d 861, 884 (9th Cir. 2003). After reviewing lower court holdings, this Court finds a split of authority on this issue in 1991.

Two federal circuit courts that had addressed the issue acknowledged that a defendant could proceed with a constitutional claim, but rather than relying strictly upon *Brady*, as Petitioner appears to, these courts anchored their decisions in the due process requirement that a defendant must intelligently, knowingly, and voluntarily enter a guilty plea. *Campbell*

**Memorandum Decision and Order - 17**

*v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985); *Miller v. Angliker*, 848 F.2d 1312, 1319-20

(2d. Cir. 1988).[4]  One circuit court appears to have issued conflicting decisions.  *Compare*

*White v. United States*, 858 F.2d 416, 422 (8th Cir. 1988) (finding that a claim existed) *with*

*Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989) (noting, without analysis, that a

guilty plea waives the right to disclosure of favorable evidence).  At least one federal district

court had held that a defendant's guilty plea waived any right to raise a *Brady*-type claim,

while another recognized that such a claim could proceed.  *United States v. Ayala*, 690

F.Supp. 1014 (S.D. Fla. 1988) (claim is waived); *Fambo v. Smith*, 433 F.Supp. 590, 598

(W.D.N.Y. 1977) (claim can proceed).

The state courts generally found a cognizable claim under these circumstances, but

a few courts disagreed.  *See Lee v. Missouri*, 573 S.W.2d 131, 134-35 (Mo. Ct. App. 1978)

(guilty plea may be set aside if the evidence was material to decision to plead guilty); *Florida*

*v. Pitts*, 249 So.2d 47 (Fla. App. 1st Dist. 1971) (same); *Ex Parte Lewis*, 587 S.W.2d 697,

701 (Tex. Crim. App. 1979); *but see People v. Day*, 541 N.Y.S.2d 463 (N.Y. App. Div.

1989).  Even in Idaho, the authority was conflicting.  In 1982, the Idaho Court of Appeals

---

[4]  After Petitioner's convictions were final, the Ninth and Tenth Circuits joined these
circuits.  *Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995); *United States v. Wright*, 43
F.3d 491 (10th Cir. 1994).  The Seventh Circuit has also recently indicated that it believes there
is a due process right to the disclosure of exculpatory evidence under these circumstances.
*McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003).  The Fifth Circuit has concluded that
such a claim is *Teague*-barred in its entirety.  *Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000);
*but see Ferrara v. United States*, 384 F.Supp. 384 (D.Mass. 2005) (disagreeing with *Matthew*).
201 F.3d 353 (5th Cir. 2000).

held that a defendant waives his right to require a prosecutor to disclose evidence when he enters a guilty plea. *Schmidt v. State*, 647 P.2d 796 (Idaho Ct. App. 1982). But five years later, that court appeared to retreat from this position and addressed the merits of a similar claim, relying upon a defendant's right to the effective assistance of counsel during the plea bargaining process. *State v. Simons*, 731 P.2d 797, 802-03 (Idaho Ct. App. 1987).[5]

As a result, a survey of the legal landscape in 1991 reveals, at best, an emerging trend toward recognizing some type of constitutional claim, but courts disagreed on the precise basis for the claim and the standards to be applied, and a few courts concluded that no such claim existed. Given the lack of uniformity, this Court cannot say that a state court would have been compelled to find that the Constitution required the rule that Petitioner now seeks to apply, and the fifth claim is barred by *Teague*. Petitioner does not argue that the exceptions to non-retroactivity apply, and this Court finds that they do not. *Accord Matthew v. Johnson*, 201 F.3d 353, 369-70 (5th Cir. 2000).

Alternatively, even if this claim were not barred by *Teague*, Petitioner cannot prevail on the merits. The Idaho Supreme Court rejected Petitioner's due process argument, in part,

---

[5] Shortly after Petitioner's convictions became final, the Idaho Court of Appeals stated more definitively that a prosecutor has a duty to disclose exculpatory evidence even when a defendant pleads guilty, and that the failure to disclose material exculpatory evidence may support a motion to withdraw a guilty plea filed before sentencing. *State v. Johnson,* 816 P.2d 364 (Idaho Ct. App. July 31, 1991). The Court of Appeals later acknowledged the tension between *Schmidt* and *Johnson* and disapproved of *Schmidt*. *State v. Gardner*, 885 P.2d 1144, 1149 n.6 (Idaho Ct. App. 1994).

**Memorandum Decision and Order - 19**

because it determined that the withheld evidence was not material to the case. *Rhoades*, 809 P.2d at 465. This Court agrees.

Evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed. *See United States v. Bagley*, 473 U.S. 667, 678 (1985). As applicable to the guilty plea context, a defendant must persuade the court that there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *See, e.g., Miller v. Angliker*, 848 F.2d 1312, 1322 (2d. Cir. 1988). This is an objective determination, based upon the facts and circumstances of the case. *Id*. Petitioner does not meet that standard here.

The state district court ruled that any evidence of the Baldwin and Michelbacher homicides would be excluded from this case. Given this ruling, Petitioner has not shown that Buchholz's statements would have been admissible had the Haddon case gone to trial. But even if the statements were admissible, Petitioner then risked the introduction of other incriminating evidence from the Baldwin matter. The State would also have been free to argue that Buchholz's confession was false because he was simply angry for being arrested on another charge, and Petitioner points to no other evidence that directly implicates Buchholz in Baldwin's murder. Further, the defense was aware that Buchholz had made incriminating statements, yet Petitioner apparently did not believe that the evidence was persuasive enough to risk going to trial, and he has not demonstrated why additional details regarding the Buchholz confession would have altered that decision.

**Memorandum Decision and Order - 20**

On the other hand, the incriminating evidence that Petitioner would have faced at trial included the following:

- A witness claimed to have seen a green Ford LTD matching the general description of the car that Petitioner drove on occasion at the convenience store where the murder occurred during the time frame that the murder allegedly occurred;

- A ballistics expert would have testified that a .38 caliber bullet recovered from the body of the victim was fired by the .38 caliber handgun that was found adjacent to the Ford LTD in Nevada soon after Petitioner was seen abandoning the car;

- A fingerprint examiner would have testified that Petitioner's fingerprints were in the Ford LTD;

- A gun shop employee claimed that he sold Petitioner three boxes of .38 caliber bullets around the time of the homicide, and a box of .38 caliber ammunition was found in the Ford LTD;

- Other witnesses claimed that they had seen Petitioner with a handgun similar to the one that was found near the Ford LTD;

- Police officers discovered items similar to those stolen from the convenience store in a camper at Petitioner's residence and on his person at the time of his arrest;

- Petitioner stated "I did it" at the time of this arrest in Nevada when asked about the death of Nolan Haddon;

- Two jail inmates would have testified that Petitioner had admitted to them that he shot Nolan Haddon.

*See State's Lodging B-5*, pp. 469-72.

While Petitioner contends that some of this evidence was of dubious quality–particularly the "I did it" statements and the jailhouse informant testimony–the Court

concludes that, under all of the circumstances of this case, the Buchholz evidence would not have been material to a decision to enter a conditional guilty plea in this case, nor does it otherwise create a reasonable probability of a different outcome.  Therefore, even if the fifth claim were not *Teague*-barred, Petitioner cannot demonstrate that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

# V.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1.   Petitioner's Motion to Amend Petition for Writ of Habeas Corpus (Docket No. 35) is DENIED.

2.   Petitioner's Motion to Stay Federal Proceedings (Docket No. 36) is DENIED.

3.   Petitioner's Request to Appear in State Court (Docket No. 37) is DENIED.

4.   Respondents' Motion to Resolve *Teague*-barred and Procedurally Defaulted Claims Prior to Filing Motions for Summary Judgment (Docket No. 32) is GRANTED.

5.   Respondents' Motion to Dismiss *Teague*-barred Claims (Docket No. 34) is GRANTED in part.  Petitioner's second, third, part of the fourth, and fifth

**Memorandum Decision and Order - 22**

claims in the Amended Petition are dismissed as *Teague*-barred.  Alternatively, Petitioner's third and fifth claims are denied on the merits.

6.      Respondents' Motion to Dismiss Procedurally Defaulted Claims (Docket No. 33) is DENIED as moot.

7.      All motions for summary judgment are due within 30 days of the date of this order.  Responses shall be filed within 21 days of receiving a motion.  Reply briefs, if necessary, are due within 10 days of receiving a response.  No extensions of time will be granted.

DATED:  **December 29, 2005**

Honorable Edward J. Lodge
U. S. District Judge

**Memorandum Decision and Order - 23**