IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

PAUL EZRA RHOADES,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. CV 97-170-S-EJL
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀**MEMORANDUM DECISION**
DAVE PASKETT, Warden of the Idaho )⠀**AND ORDER**
State Prison; and ALAN LANCE,⠀⠀)
Attorney General of the State of Idaho, )
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Respondents.⠀⠀⠀⠀)
_____ )

Before the Court in this habeas corpus matter are the parties' motions for summary judgment. Also pending is Petitioner's motion to expand the record and Respondents' motions to strike. The Court has determined these matters are suitable for disposition without oral argument. *See* D. Idaho L. Civ. R. 7.1 (d).

For the reasons set forth more fully herein, the Court concludes that Respondents' motion for summary judgment will be granted, and the two remaining habeas claims will be denied.

## I.

## BACKGROUND

Petitioner stands convicted of murder, and other associated felonies, for the shooting deaths of Stacy Baldwin, Susan Michelbacher, and Nolan Haddon, which occurred during

an approximately three week period in February and March of 1987.  This habeas case arises from his convictions in the Haddon matter.

After Petitioner was convicted in separate trials and sentenced to death for the murders of Ms. Michelbacher and Ms. Baldwin, he agreed to enter a conditional guilty plea to an amended charge of second-degree murder and robbery in the Haddon case.  Petitioner maintained his innocence, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), but conceded that the State had sufficient evidence to convict him.  Petitioner also reserved his right to appeal the trial court's adverse decisions.  The trial court subsequently sentenced Petitioner to two indeterminate life sentences, to be served concurrently.  On February 1, 1991, the Idaho Supreme Court affirmed Petitioner's convictions and sentences.  *State v. Rhoades*, 809 P.2d 455 (1991).

Six years later, Petitioner filed a petition for writ of habeas corpus in this Court, which he later amended.  The case was stayed for an extended period of time, after which the Court dismissed all but two of Petitioner's claims as barred by the non-retroactivity principles derived from *Teague v. Lane*, 489 U.S. 288 (1989), or as otherwise lacking in merit.  The two remaining claims are: (1) Petitioner alleges that his constitutional privilege against self-incrimination was violated when police officers continued to question him in the absence of a valid waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), or after he had actually invoked his right to silence, and (2) Petitioner contends the judge who presided over the entry of his *Alford* plea and the sentencing hearing was biased because he had also presided over the Michelbacher proceeding, in which the judge had imposed a death

**Memorandum Decision and Order - 2**

sentence.

The parties have filed motions of summary judgment on these two claims, which are now ripe for adjudication.[1]

## II.

### STANDARD OF LAW

A petition for writ of habeas corpus is subject to the Federal Rules of Civil Procedure to the extent that the Rules would not be inconsistent with established habeas practice and procedure. *See* Rule 11 of the Rules Governing Section 2254 Cases. Summary judgment motions brought under Federal Rule of Civil Procedure 56 are generally consistent with habeas practice and procedure. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The law governing this Petition is contained within the relevant provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). The AEDPA established a deferential standard of review that a federal habeas court must apply to a state court's resolution of constitutional claims. Under AEDPA, a federal court may grant habeas relief only if the state court's adjudication on the merits of a claim:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[1] Respondents' request to strike Petitioner's memorandum in opposition to Respondents' motion for summary judgment as untimely will be denied. Petitioner's memorandum will be considered to be timely.

**Memorandum Decision and Order - 3**

Supreme Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court's decision is "contrary to" federal law when the state court applied a rule of law different from the governing law set forth in United States Supreme Court precedent, or when it confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a different result. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application" of clearly established federal law when the court was "unreasonable in applying the governing legal principle to the facts of the case." *Id*. at 413. A determination whether a state court's decision is unreasonable must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004).

In an alteration of the traditional summary judgment standard, any relevant state court findings of fact in a habeas proceeding are presumed to be correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A petitioner is not entitled to present new evidence in a habeas proceeding unless he demonstrates that he was diligent in attempting to develop that evidence in state court and was unable to do so, or he can show that his case falls within one of the narrow exceptions to the prohibition on evidence development in federal court. *See* 28 U.S.C. § 2254(e)(2); *see also Williams v. Taylor*, 529 U.S. 420, 432 (2000).

**Memorandum Decision and Order - 4**

### III.

### THE ALLEGED *MIRANDA* VIOLATION

Petitioner first contends that the admission of incriminating statements that he had made after his arrest violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, Petitioner asserts that police officers continued to interrogate him either after he invoked his right to silence or at least in the absence of a valid waiver of his rights. This Court concludes that Petitioner is not entitled to relief.

A.    Factual Background

Petitioner was arrested by two Nevada law enforcement officers, Trooper Neville and Officer Miller, at a truck stop and casino in Nevada. There is evidence in the record that Trooper Neville advised Petitioner of his *Miranda* rights, though the officers did not interview or interrogate him.

When Idaho officers Victor Rodriguez and Dennis Shaw arrived at the scene, Petitioner was handcuffed and bent over the trunk of a patrol car. As the officers approached, Petitioner turned toward them and said, "I did it." Detective Rodriguez then re-advised Petitioner of his rights. When asked if he understood, Petitioner indicated in an affirmative manner that he did, saying, "I do, yes," or "yeah." *State's Lodging B-8(a)*, p.858. A Nevada officer saw Petitioner respond to Rodriguez by first nodding his head as if he understood his rights, and then, after Rodriguez said something else that the officer could not hear, shaking his head from side to side. *State's Lodging B-8(c)*, pp.1418, 1424-25.

After a brief stop at the local police station, Petitioner was transported to a highway

patrol substation for processing.  Once there, Detective Shaw made a statement to the effect that if he had arrested Petitioner earlier, the three victims would still be alive.  In response, Petitioner again stated, "I did it."[2]

The "I did it" statements were admitted into evidence at the Michelbacher and Baldwin trials over Petitioner's objection and would have been presented at a trial in the Haddon matter had Petitioner not entered an *Alford* plea.

On appeal, the Idaho Supreme Court determined that Petitioner's first statement, which he made at the scene of the arrest, was admissible as a voluntary and spontaneous comment, regardless whether it occurred before or after he had been read his *Miranda* rights. *State v. Rhoades*, 809 P.2d 455, 462 (Idaho 1991).  With respect to the second statement at the highway patrol substation, the court found that although Shaw had engaged in the "functional equivalent of interrogation" while Petitioner was in custody, implicating *Miranda*, Petitioner's statement was admissible because he had been advised of his rights,

---

[2]   The state court record reflects that Shaw followed this remark with something similar to "the girl in Blackfoot, and the two in Idaho Falls," to which Petitioner repeated, "I did it." *State's Lodging 8(a)*, pp. 898.  Shaw's follow up comment was sanitized by stipulation at trial to exclude the reference to other victims.  For simplicity, the Court will refer to Petitioner's combined comments at the substation as the second "I did it" statement.

**Memorandum Decision and Order - 6**

which he indicated that he understood, and he had not invoked his right to silence. *Id.* at 462-63.

> B.      Clearly Established Federal Law

In *Miranda*, the United States Supreme Court set forth the now familiar rule that before a law enforcement officer interrogates an individual who is in custody, the officer must inform the individual of his right to silence and his right to have the assistance of an attorney. 384 U.S. at 475-78. Absent a knowing and voluntary waiver of those rights, any statement taken during custodial interrogation will be excluded from evidence. *Id.* at 476. The prosecution has the burden to show a valid waiver, but such a waiver may be implied, rather than expressed, based upon a totality of the circumstances. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). A spontaneous and voluntary statement that is not the product of police interrogation or its functional equivalent will be admissible regardless whether the individual was warned of his rights. *Miranda*, 384 U.S. at 478.

> C.      Discussion

In the present case, the Idaho Supreme Court's finding that the first "I did it" statement was voluntary and not the product of police questioning is amply supported by the record. The officers who claimed to have heard the comment all testified that Petitioner blurted it out as the Idaho officers approached him, and that the statement was not in response to a question by any officer who was present. In *Miranda* itself, the Supreme Court noted that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." 384 U.S. at 478. Consequently, the Idaho Supreme

**Memorandum Decision and Order - 7**

Court's decision is neither contrary to nor an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1).  Additionally, its decision was not based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(2).

Regarding the second statement, this Court concludes that the Idaho Supreme Court's determinations that Petitioner was warned of his rights, he understood those rights, and he did not assert his right to silence, are all reasonable findings based upon the record that was before the court.  *Rhoades*, 809 P.2d at 462-63.  This Court also concurs with the Idaho Supreme Court that Detective Shaw's comment, which the state court found was "made to the defendant," amounted to the functional equivalent of interrogation for purposes of *Miranda*.  *Id*. at 461.  Shaw's comment carried an implied accusation that Petitioner had committed three homicides, which, under the circumstances, Shaw should have known was reasonably likely to elicit an incriminating response.  *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).

However, the Idaho Supreme Court's application of the rule of constitutional law relating to an individual's waiver of *Miranda* rights is more problematic.  The state court declared that, "the *Miranda* rule does not require police to maintain total silence toward the suspect until they are presented with a valid waiver of *Miranda* rights . . . [a]fter rights are read to and acknowledged by the detainee and until the right to silence or counsel is asserted, the police may initiate questioning."  *Id*. at 463.  To the extent that the Idaho Supreme Court applied a rule that requires a defendant to shoulder a burden to affirmatively prove that he

**Memorandum Decision and Order - 8**

had invoked his right to silence or counsel, this was an incorrect statement of law.  Rather, the prosecution must demonstrate that a defendant has waived his rights before a statement that was made during custodial interrogation will be admissible.  *Miranda*, 384 U.S. at 475; *Butler*, 441 U.S. at 373.  To the extent that the state court's ultimate decision was perhaps a less than artful determination that Petitioner had implicitly waived those rights, this Court agrees.[3]

A waiver need not be expressed orally or in writing but instead may be implied based upon the facts and circumstances of the case.  *Butler*, 441 U.S. at 373.  Though silence alone is insufficient, a waiver may be "inferred from the defendant's understanding of his rights coupled with a course of conduct reflecting his desire to give up his right to remain silent and have the counsel of an attorney."  *Fare v. Michael C.*, 442 U.S. 707, 724 (1979).  That situation exists here.

Petitioner had been advised of his rights at the time of his arrest, at least once and probably twice, and he indicated that he understood those rights.  The state courts acknowledged that Petitioner may have been under the influence of narcotics, but they credited the officer's testimonies that he was alert enough to understand what was going on around him.  *See Rhoades*, 809 P.2d at 463.  This is a reasonable finding of fact based upon the record, and the presumption of correctness has not been rebutted.  28 U.S.C. § 2254

---

[3]  The Court need not decide whether the state court's decision regarding waiver is "contrary to" clearly established federal law as determined by the United States Supreme Court, because Petitioner would not prevail even under a de novo standard of review.  *See, e.g., Cooperwood v. Cambra*, 245 F.3d 1042, 1046 (9th Cir. 2001).

**Memorandum Decision and Order - 9**

(e)(1).  Further, this Court will not disturb the Idaho Supreme Court's finding that Petitioner did not invoke his right to silence by shaking his head in a negative fashion when he was detained.

The second "I did it" statement occurred relatively soon, though not immediately, after the arrest.  And while Petitioner's statement may have been elicited by Detective Shaw's remark, it was not the product of a coercive interrogation in the classic sense of a lengthy interview designed to extract a full and detailed confession, nor was it even in response to pointed questioning.  Rather, it was uttered during a brief exchange during the preliminary phases of booking and processing in which the arresting officer made an offhand comment.  There is no showing that any officer used force, pressure, or trickery to disgorge a waiver or a confession from Petitioner.  Under the totality of the circumstances, then, this Court concludes that Petitioner waived his *Miranda* rights when, with an awareness and understanding of those rights, he chose to say "I did it" in response to Shaw's comment.

In order to avoid this conclusion, Petitioner seeks to expand the record to include new evidence that was not developed in the state courts.  Specifically, he has requested permission to include testimony that Detective Shaw gave during a 1996 deposition in one of Petitioner's capital habeas cases.  In that testimony, Shaw refers to a short conversation that he had with Petitioner about an unrelated burglary while he was transporting Petitioner to the substation, before Petitioner made his second statement:

> When we were in the car and I started to talk to him about – I was talking about [the burglary of] Lavaunda's Lingerie and only Lavaunda's

**Memorandum Decision and Order - 10**

Lingerie in the case because I wanted to start chronologically and get this whole thing – you know, I wanted to start there because that's where my warrant was.  And he said he didn't want to talk about it, get these handcuffs off of him because it was cramped in that car, and it was cramped.  It was cramped for me and I'm pretty good sized, too, so I understood that, and so I – when we got inside I took the handcuffs off and then we, you know, proceed to talk.

(Shaw Deposition, pp. 81-82.)

Petitioner seeks to include this evidence to support his contention that rather than waive his rights, he specifically invoked his right to silence about the murders when he stated that he "didn't want to talk about it" in response to Shaw's question about the burglary of Lavaunda's Lingerie.  Respondents object to expanding the record.

Consistent with Congress's intent to further the principles of comity, federalism, and finality, the AEDPA has greatly restricted a state prisoner's ability to present new evidence during habeas review in federal court.  A federal court cannot hold an evidentiary hearing when the state prisoner "failed to develop" the factual basis in support of a claim in state court, unless very limited exceptions apply.  28 U.S.C. § 2254(e)(2).  The restrictions on an evidentiary development also apply when a petitioner seeks relief, without an evidentiary hearing, based upon evidence that was never presented in state court.  *Holland v. Jackson*, 542 U.S. 649, 653 (2004); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005).  To find that a petitioner has failed to develop the factual basis of a claim, though, the habeas court must find "a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel."  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

**Memorandum Decision and Order - 11**

The Court finds a lack of diligence here. Petitioner was provided a hearing on his motion to suppress in state court before the Michelbacher trial. He thoroughly examined and cross-examined the police officers who claimed to have heard his incriminating statements, both at the pretrial hearing and at trial. Petitioner sought post-conviction relief in the Baldwin and Michelbacher matters, though he did not specifically seek such relief in this case. Presumably, Petitioner was fully aware of the factual circumstances of his own arrest at those times, including the exchange to which Shaw alluded in his deposition testimony. In addition, Petitioner has not shown, beyond his conclusory statement, that his counsel lacked access to the information, which was contained in a police report, before the Michelbacher trial. Therefore, Petitioner had several opportunities to present the additional facts in support of his claim in state court, and he did not do so.

But even if the record were expanded to include the new evidence, Petitioner would still not be entitled to relief. At most, his exclamation that he "didn't want to talk about it, get these handcuffs off" because of the cramped conditions in the patrol car is an ambiguous or equivocal reference to his right to silence with respect to questioning about the unrelated burglary; the statement may reflect Petitioner's intent not to speak about the burglary until the handcuffs were removed and he was out of the patrol car, or the it may show his desire not to speak about that crime at all. In a related context, the Supreme Court has held that an ambiguous reference to the assistance of counsel is insufficient to invoke that right under *Miranda* and its progeny. *Davis v. United States*, 512 U.S. 452, 458 (1994). While neither

**Memorandum Decision and Order - 12**

the Supreme Court nor the Ninth Circuit has yet concluded whether the *Davis* rule applies to an ambiguous invocation of the right to silence, several jurisdictions have so held, and this Court is persuaded by their reasoning. *See, e.g. Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001); *United States v. Hurst*, 228 F.3d 751, 759-60 (6th Cir. 2000); *United States v. Banks*, 78 F.3d 1190, 1198 (7th Cir. 1996), *vacated on other grounds by Mills v. United States*, 519 U.S. 990 (1996); *Medina v. Singletary*, 59 F.3d 1059, 1100 (11th 1995); *cf. Evans v. Demosthenes*, 98 F.3d 1174, 1176 (9th Cir. 1996) (concluding that the issue need not be resolved).

Moreover, the discussion and Petitioner's comment did not pertain to the murders. A suspect can waive his *Miranda* rights selectively, choosing to discuss some matters and not others. *United States v. Garcia-Cruz,* 978 F.2d 537, 541-42 (9th Cir. 1992); *United States v. Soliz*, 129 F.3d 499, 503-04 (9th Cir. 1997). The topic of discussion in the patrol car was limited to the burglary of Lavaunda's Lingere, and even if Petitioner asserted his right to silence with respect to questioning about that crime, such an invocation would not affect the validity of Petitioner's waiver in relation to his "I did it" statement in response to Shaw's comment about the murders.

**Memorandum Decision and Order - 13**

For all of these reasons, Respondents are entitled to judgment as a matter of law on this claim.

## IV.

## THE BIASED JUDGE CLAIM

In his fourth ground for relief, Petitioner contends that his due process right to an unbiased judge was violated.  In support, he relies primarily upon the findings that the judge had made in sentencing Petitioner to death in the Michelbacher matter.  This Court again concludes that Petitioner is not entitled to relief.

Though a fair trial in front of an impartial judge is a basic component of due process, a litigant must overcome a strong presumption that a judge is not biased or prejudiced and that the judge has properly discharged his or her official duties.  *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (citation omitted).  In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court addressed a request to recuse a judge for bias or prejudice when the judge presides over successive proceedings, noting that "it has long been regarded as normal or proper for a judge to sit . . . in successive trials involving the same defendant." *Id*. at 551-52. The Court further declared that judicial rulings alone are almost never sufficient to support a request for recusal.  *Id*. at 555; *see also Poland v. Stewart*, 117 F.3d 1094, 1103 (9th Cir. 1997).

In light of this authority, it is clear that the fact that the same judge presided over both the Michelbacher and Haddon portions of this case in state court does not, by itself, implicate

**Memorandum Decision and Order - 14**

Petitioner's due process rights.  Petitioner has not shown, moreover, that the language that the judge used to support the death sentences in the Michelbacher proceeding demonstrates that he was actually biased or prejudiced, or that there was even a strong appearance of bias or prejudice.  During the hearing on the motion to disqualify, the judge stated that those findings "are limited to those facts relating to the Michelbacher case . . .  I can assure you that will have nothing to do with the Haddon portion of this case." *State's Lodging B-10*, pp. 2638-39.  He also noted that, "I have no bias, I have no prejudice that is either personal or in a judicial capacity toward Mr. Rhoades." *State's Lodging B-10*, p. 2637.  The record supports these statements, and Petitioner has not pointed to any evidence that the judge was unable to preside over his case in a fair and impartial manner.

## V.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1.    Respondents' Motion for Summary Judgment (Docket No. 50) is GRANTED.

2.    Petitioner's Motion for Summary Judgment (Docket No. 51) is DENIED.

3.    Petitioner's Motion to Expand the Record (Docket No. 61) is DENIED.

4.    Respondents' Motion to Strike the attachment to Petitioner's Motion for Summary Judgment (Docket No. 52) is GRANTED to the extent that Respondents seek to preclude Petitioner from expanding the record to support his Amended Petition.

**Memorandum Decision and Order - 15**

5.     Respondents' Motion to Strike Petitioner's Memorandum in Opposition (Docket No. 56) is GRANTED in part and DENIED in part.  The Court will not strike the Memorandum.  The Motion is granted to the extent that Respondents seek to preclude Petitioner from expanding the record to support his Amended Petition.

6.     Petitioner's first and fourth grounds for relief in Amended Petition for Writ of Habeas Corpus are DENIED.

DATED:  **March 30, 2006**

Honorable Edward J. Lodge
U. S. District Judge

**Memorandum Decision and Order - 16**